## C. J. BRADLEY v. W. E. RAPP.

Where a Tax Collector's bond, given under the statutes of 1849, is so defective in form as to deprive it of an authentic character, it cannot be enforced by summary process, and a sale made under such process will not divest the title to the property.

APPEAL from the District Court of Franklin, *Barry*, J. *Garrett & Benton*, for plaintiff and appellant. *Morrison* and *M. A. Jones*, for defendant.

BUCHANAN, J.  Suit upon a note given by defendant for property purchased at probate sale. Defence: that the property sold already belonged to defendant by virtue of an adjudication made by the Sheriff under an execution upon a Tax Collector's bond. The administrator contends that the Sheriff's sale under execution was void for irregularity. This cause has been already before the Supreme Court, and was remanded in 1852, to make the parish of Franklin party. (Not reported.)

The objections made by plaintiff to the title under which defendant claims to have previously acquired the property, are as follows:

1. The Tax Collector's bond was not made as the law directs, and consequently was not an act importing confession of judgment, upon which executory process could issue.

2. The bond was not recorded according to law, and consequently there was no mortgage.

3. A certified copy of the bond, and proof of demand of payment is not shown by the record to have been filed in the Clerk's office of the District Court before issuing execution.

4. There was no notice to the administrator, before seizure under the execution upon the bond.

The subject of the form and effect of Tax Collectors' bonds, has been confused by the passage of three Acts of the Legislature within a short time of each other: two in 1847 (pages 108 and 173 of the Session Acts), and one in 1848, (page 85). By the first of those Acts, such bonds were directed to be executed before the Recorder of the parish and two subscribing witnesses, and were to operate as a mortgage from the time of their registry in a separate book, to be kept for that purpose by the Parish Recorder. By the subsequent Act of 1847, (page 173,) the Parish Recorders were authorized, in general terms, to take bond, with security, from Tax Collectors, the original of which bond to be retained by said Recorder, and a copy transmitted to the State Auditor or Treasurer. By the terms of this Act the bond operated as a legal mortgage, and required no registry whatever. *Copley* v. *Dinkgrave*, 6 An., 595. But the Act of 1848 revived, and even increased the formal requirements for the confection of such bonds. It now became necessary to have them executed before the Recorder and three members of the Police Jury, and to be authenticated by the attestation of two witnesses and the signature of the Parish Recorder, and also to be by him registered in a separate book, kept for that purpose; which bond, so registered, shall operate from the date of the registry as a mortgage, etc.

The bond of *Augustus H. Bradley*, now under consideration, being dated the 6th January, 1849, was under the empire of the last recited Act. It is not authenticated by the attestation of any witness, nor does it purport to have been executed before any person. We find, however, written below it, the approval of three members of the Police Jury, without any date; and, on the principle "*ut res magis valeat quàm preat,*" would infer that this approbation was contemporaneous with the bond; but such an inference cannot be predicated of the Parish Recorder's written approval, which follows that of the Police Jury, and is dated February 12th, 1849, more than a month after the date of the bond. As to the registry of the bond, this appears to have been made in the ordinary parish record of mortgages, and not in a book separately kept for the registry of bonds.

Under the view that we have taken of this case, it becomes unnecessary to pass upon this question of registry.

The defects in the form of the bond are such as to deprive it of an authentic character, and to prevent the enforcement of it by that summary process which is alone attached to acts importing on their face full and entire proof. See Acts of 1847, page 109, sec. 5.

The view which we have taken of the first ground of objection, above stated, renders it unnecessary to examine the others. We are of opinion that the sale in question did not divest the title of *Bradley's* succession to the lots in question.

It only remains to enquire, whether the defendant is entitled to deduct from his note now sued on, the price, fifty dollars, expressed in the Sheriff's deed as having been paid by him for the three lots of ground, afterwards sold at probate sale, and again purchased by him. An examination of the record shows a curious discrepancy between the return of the *fi. fa.* on the bond, and the Sheriff's deed to defendant. By the return of the writ, it would seem that the Sheriff seized

the three lots in question; also nineteen head of cattle and sixty head of hogs; also a quarter section of land; also another quarter section of land; and that all the property so seized was adjudicated, in block, to *William E. Rapp*, as the last and highest bidder, for parish paper amounting to one hundred and twenty-four dollars. By this deed, the Sheriff declares that the three town lots in Winnsborough were offered for sale, when *William E. Rapp* bid the sum of fifty dollars, and the same were adjudicated to him as the last and highest bidder; also that *Rapp* had complied with the terms of sale. The Sheriff's return is in evidence before us, equally with the Sheriff's deed, and it is not seen which of the two is to be taken in preference to the other, as *testimonium veritatis*. We are compelled to regard the proof of the payment alleged, as defective, and to dismiss this branch of the case from further consideration.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, and that plaintiff, as administrator of the succession of *Augustus H. Bradley*, recover of *William E. Rapp*, three hundred and two dollars, with eight per cent. per annum interest from 22d March, 1852, and costs in both courts.